SIMON ABELES V. TIMOTHY BRANSFIELD.

1. PARENT AND CHILD; *Injury to Minor; Right of Recovery.* Where a mother, who is the only surviving parent of a minor son, commences an action in her son's name, as his next friend, and sets forth in the petition a cause of action for injuries to the person of her son, and also sets forth loss of time by her son on account of such injuries, and also expenses incurred by her son in regaining his health from such injuries, and asks judgment for her son for damages accruing on account of such loss of time and expenses, compensation for such loss of time and expenses may be recovered in such action, notwithstanding it may be shown that the mother has never relinquished to her son his time or services in any manner except by the commencement and prosecution of such action.

2. ——— By reason of the commencement and prosecution of such action, it must be conclusively presumed that the mother relinquished and gave to her son all compensation for such loss of time and expenses.

*Error from Douglas District Court.*

AT the October Term 1875, upon a verdict in favor of *Bransfield,* plaintiff, the district court gave judgment, and defendant *Abeles* appeals, and brings the case here on error.

*Lucien Baker,* for plaintiff in error.

*Stillings & Fenlon,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The plaintiff in error states this case as follows:

"This suit was originally commenced in the district court of Leavenworth county, by defendant in error against plain-

tiff in error, to recover five thousand dollars damages for injuries received to his right arm, in July 1874, while drawing tickets, blindfolded, from a wheel, alleged to have been revolved under the direction of the plaintiff in error, while engaged in a supposed charitable enterprise—raising funds for the purpose of erecting a building for a juvenile reform school in Leavenworth city. This suit was, on application of the plaintiff in error, sent to Douglas' county for trial. The jury returned a verdict for defendant in error, of $150, upon which judgment was rendered."

The defendant in error states the case thus:

This action was brought by a minor, through his next friend, to recover damages for personal injuries received through the negligence and carelessness of the defendant. There is no question made as to the sufficiency of the petition. The jury found for the plaintiff, and the court rendered judgment on the verdict. The findings and verdict of the jury are as follows:

*1st Question.*—Were the men who were revolving the wheel at the time of the alleged accident so much under the influence of intoxicating liquor as to render them incompetent to discharge their duties properly? *Answer.*—Yes.

*2d Ques.*—Were the men who were revolving the wheel at the time of the alleged accident competent and proper persons for such service? *Ans.*—No.

*3d Ques.*—Had Mrs. Bransfield, at the time of the alleged accident to her son, relinquished her claim to his services? *Ans.*—No.

We the jury find for the plaintiff, and assess his damages at $150.

The first point made by plaintiff in error, in his brief, is stated by his counsel as follows: "*First*—We submit that the verdict was not sustained by any evidence." Now why is not the verdict sustained by sufficient evidence? In what particular is it not so sustained? or what part of the verdict is not sustained? What necessary fact is not proved? The plaintiff in error has failed to inform us, and we have been unable to discover why the verdict is not sustained by sufficient evidence. We cannot therefore reverse the judgment of the court below upon this ground. The second point

made by plaintiff in error in his brief is stated by his counsel as follows:

"*Second*—The jury found that Julia Bransfield, (the only surviving parent of Timothy Bransfield,) had never released her right to the services of her son Timothy. The defendant in error, (plaintiff in the district court,) gave evidence of the value of the physician's services, and loss of time of defendant in error. The court instructed the jury that the defendant in error, a minor, who had not obtained a release of his time from his parent, was entitled to recover for medical attendance, which the parent would have to pay, and for loss of time which belonged to the parent. The defendant Abeles asked the court to instruct the jury that the plaintiff, Timothy Bransfield, could not recover for medical attendance and loss of time, unless Mrs. Bransfield had released her right to her son's services, which instruction was refused.

"This case then presents the question squarely: has a minor who brings suit by his next friend, for injuries to his person, a right to recover for loss of time and medical attendance, without showing that he is doing for himself, and that his parent or parents, as the case may be, have released their right to his services? That in such case, loss of time and medical attendance should not be considered by the jury, without such showing, see 10 Kas. 519. In this case the jury expressly finds that the service of plaintiff, Timothy, belonged to his mother; consequently she alone was entitled to them, and responsible for the physician's services. 10 Kas. 519."

The defendant in error answers this point of the plaintiff in error as follows:

"There is nothing in the record showing that the father of the plaintiff was dead; no showing that the mother had any right to the services of her son, unless the bare fact of being the mother gave her such right, and this, as a proposition of law cannot be maintained. Section 4 of the act relating to minors, (Gen. Stat. 581,) gives the right to the minor to recover for his services, when the contract for such services was made with him alone, to the exclusion of the parent or guardian. The record shows the employment of young Bransfield by Abeles, without any intervention of a parent or guardian. It follows then, that if during such employment he was injured by the carelessness or negligence of Abeles, he is entitled to recover for his medical expenses and loss of time, and it

certainly would have been error for the court to have instructed the jury that plaintiff could not recover for loss of time and doctor's bills unless Mrs. Bransfield had released rights she never had. 'The mother is entitled to no power, but only to reverence and respect.' 1 Sharswood's Blackst. 453; *Commonwealth v. Murray,* 4 Binney, (Pa.) 487; *Whipple v. Dow,* 2 Mass. 415; *Pray v. Gorham,* 31 Me. 240; *Passenger Railway v. Stuter,* 54 Penn. St. 375; 15 N. H. 486; Gen. Stat. 580. There is nothing in this record to show that any instructions were given or refused by the court. The statement in the record is, that certain instructions were asked, and filed in the clerk's office, but no showing as to the ruling of the court on such instructions. The case in 10 Kas. 519, referred to by counsel for plaintiff in error, has no bearing on the questions in this case. The statement in plaintiff's brief, that the jury 'expressly find that the services of Timothy Bransfield belonged to his mother,' is not sustained by the record. There is no such finding."

We would also say, that the record does not show that Julia Bransfield was "the only surviving parent of Timothy Bransfield;" nor does the record show whether the father of Timothy Bransfield (if living) had released to him his time and services, or not. There was no exception taken to the introduction of any evidence by either party, and hence we cannot consider any supposed error in the reception of evidence. The instruction given by the court, and of which the plaintiff in error complains, reads as follows:

"If the jury find for the plaintiff, they shall in the assessment of his damages take into consideration his loss of time, if any, and any expenses he may have been put to or incurred in curing the injury — such as doctor's bill, medicines, and other necessary expenses, and also the injury and the extent of the same, and the mental and physical suffering which the plaintiff may have endured by reason of the injury."

It will be noticed, that the court does not tell the jury that they may assess damages for any expenses paid or incurred by the plaintiff's father, or mother, but only for such expenses as the plaintiff himself paid or incurred. Is there anything wrong in this? But we shall consider this question, and the one with reference to the plaintiff's loss of time, hereafter. It does not appear from the record that we have all the in-

structions given by the court to the jury, and therefore we
cannot consider those refused.

We have given all the findings of the jury in this case,
and of course it will be seen that the jury did not expressly
find that the services of the plaintiff belonged to his mother.
The jury simply found that the plaintiff's mother had not,
"at the time of the alleged accident," "relinquished her
claim to his services." They did not find what her claim
was. Now, perhaps the plaintiff's father had relinquished
*his* claim to his son's services. And perhaps also his mother
had, after said accident occurred, relinquished her claim to
her son's services. And there is nothing in the record that
shows that she ever claimed anything from the defendant for
herself, for her son's loss of time and the expenses incurred
in curing him. As she commenced this action in her son's
name, as his next friend, and set forth in the petition said
loss of time and said expenses as a part of her son's dam-
ages, and asked judgment in favor of her son for such
damages, it must now be conclusively presumed that she re-
linquished and gave to her son all claim that she might have
had for compensation for such loss of time and such expenses.
Whether the jury included anything in their assessment of
damages for said loss of time and said expenses, we cannot
tell from the record; but for the purposes of this case we
will presume that they did. We will also suppose that Mrs.
Bransfield was, as is claimed by plaintiff in error, the only
surviving parent of the plaintiff. We will also suppose,
that she was entitled to his services, and was responsible for
his support and necessary medical relief and assistance. We
will also suppose that she never in any manner relinquished
her right to his time and services, except so far as she did so
by the commencement and prosecution of this action. And
then with all these suppositions, we shall hold that by the
act of commencing and prosecuting this action, Mrs. Brans-
field gave to her son all her claim for compensation for
his loss of time and expenses occasioned by said accident.
Whether she had the power to so give the same to her son,

so that he might recover for the same in his own name, is the most difficult question in the case. Counsel have not enlightened us upon this question. Whether there are any authorities upon the question or not, we do not know. We must therefore decide the question upon first impressions. A parent ought to have such power. By allowing the child to recover for loss of time and expenses, it avoids the necessity for two suits. If no such power exists, then the parent must sue for the loss of time and expenses, and the child must sue for the injury, the pain, suffering, etc. This would require two suits where one ought to be sufficient. · The law ought to be such that both actions might be united into one. It would save a great deal of trouble and expense. And no insuperable objection can be urged against such a union, that we are aware of. Primarily, we suppose that the right to compensation for loss of time and expenses belongs to the child. It is a part of his capital with which to procure his maintenance, support and education. But as the parent, as his guardian or trustee, is responsible for all these, the parent as such guardian or trustee is allowed, in his or her own name, to recover such compensation. This is a privilege to the parent. But the parent may, as we think, waive this privilege and allow the child to recover in his own name. And where the parent commences the action for such compensation, in the name of the child, and as the next friend of the child, as Mrs. Bransfield did in this case, we think it must be conclusively presumed that the parent waives the privilege to sue for the same in his or her own name, and gives the same to his or her child, or perhaps, more properly speaking, it gives to the child the power to recover and use what really belongs to the child.

The third and last point made by the plaintiff in error as stated in his counsel's brief is as follows :

"*Third*—The plaintiff ought not to recover in this case, as both plaintiff and defendant were engaged in an undertaking in violation of law."

This point is of course not made personally by the plaintiff in error, but. is made by his counsel. Now just what kind of an illegal transaction counsel means to intimate that his client was engaged in, we are not informed, and the record does not show. It is possible that counsel means to intimate that his client was engaged in a lottery scheme. Here however we give the testimony of his client upon the subject; it is as follows:

"My name is Simon Abeles. Timothy Bransfield was in my employ at the time of the accident, and I was proprietor of the juvenile-reform-school scheme, run by me in 1873 and 1874. This scheme was for the purpose of constructing a building to reform juveniles in Kansas, in which I was at the.time deeply interested. I had no expectations or desire to obtain any pecuniary benefit from this scheme; but my sole object was to reform the juvenile delinquents of my adopted state. I had few other objects in my life than the one referred to. And the reason why the more valuable property specified in the printed schedule in the scheme were not drawn, or called for after drawn, was the lack of sympathy and want of material aid by the people of Kansas, who did not seem to have sufficient confidence in the scheme, or enough of philanthropy to aid me substantially in the scheme. The persons who turned the wheel when plaintiff was injured, were not fellow-servants of the plaintiff.. He was but a boy who worked, blindfolded, under the direction of the persons selected to conduct the drawing. And I furnished the liquors which were in the hall. My purpose in so doing was to supply refreshments to the leading employés, and to keep up the excitement of the drawing."

This is all of the testimony of counsel's client. It will be seen that he does not characterize said "juvenile-reform-school scheme" as a lottery, or as an illegal transaction. Both plaintiff and defendant, in the court below, seem to have treated the defendant's undertaking as a charitable and philanthropic enterprise, and neither of them litigated the case as though it was a lottery, or an illegal adventure. But even if the defendant's "juvenile-reform-school scheme" was nothing but a lottery, still the plaintiff was only twelve

years old at the time, and it cannot be presumed, in the absence of all showing to that effect, that he had knowledge of its illegal character.

The judgment of the court below will be affirmed.

HORTON, C. J., concurring.

BREWER, J.: While concurring in the judgment, I am not prepared to say that I assent to all the views expressed by Mr. Justice VALENTINE in the opinion.